UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| KAREN SANDERS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:16-CV-00650 |
| | § | |
| HAVIDAN RODRIGUEZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION

The Court now considers Havidán Rodríguez ("Rodríguez"), The University of Texas-Pan American ("UTPA"), and The University of Texas Rio Grande Valley's ("UTRGV") (collectively "Defendants") motion for summary judgment,[1] as well as Karen Sanders' ("Plaintiff") response.[2] After duly considering the record and relevant authorities, the Court **GRANTS** Defendants' motion for summary judgment.

### I. BACKGROUND

#### A. *Factual History*

Plaintiff began working for UTPA as a Professor of Art in 2005 and eventually received tenure.[3] On December 11, 2012, Plaintiff requested leave under the Family Medical Leave Act ("FMLA") during spring 2013 to tend to her ailing father in Detroit, Michigan.[4] Plaintiff's request was granted for a total of (and the maximum available) twelve weeks of FMLA-based leave, from January 14, 2013 to April 9, 2013.[5] Moreover, Plaintiff "was approved sick leave for

---

[1] Dkt. No. 30.
[2] Dkt. No. 34.
[3] Dkt. No. 34-6 p. 1.
[4] Dkt. No. 30-1 pp. 1 & 5.
[5] *Id*. p. 8.

the entire [s]pring 2013 academic semester,"[6] such that she was not required to perform any job duties during spring 2013, but was nevertheless paid for that period of time.[7]

In May 2013, Plaintiff notified UTPA that her father passed away in April 2013, and also that she was undergoing treatment for breast cancer in Detroit.[8] In her letter, Plaintiff specially requested "permission to teach online classes full time for the [f]all 2013 semester,"[9] noting that she had "successfully completed the BBL07-SP13 Teaching Online Program: Blackboard Learn with Ram DeLaRosa this past semester."[10] Ultimately, Plaintiff "returned to work, in September 2013, for the [f]all 2013 academic semester to the same position she was in when she took FMLA leave. She retained the same title, pay, and work responsibilities—with the only difference being she taught that semester online as per her request."[11]

In fall 2013, UTPA received complaints from Plaintiff's online students. Dahlia Guerra ("Guerra"), the Dean of UTPA's College of Arts and Humanities, explained the situation thus:

> Throughout the [f]all 2013 semester, we had numerous complaints, by email and in person, from many students who expressed their dissatisfaction with [Plaintiff's] online courses. I met with a large group of students, in November, who expressed dismay that at one point they had not heard from her for over [three] to [four] weeks. They complained that they would send her emails and that she did not respond. They also stated that she posted assignments with little instruction about how to complete them, what learning outcomes were expected, or how the students' assignments were to be graded. I saw first-hand that students were frustrated and confused about how to successfully complete [Plaintiff's] courses.

> The [technology staff] expressed concern on several occasions that the course modules were not properly entered in Blackboard format; the assignments posted lacked direction as to where to submit files; and that it was hard to say how the instructor was communicating with the students *because they could not see instructor presence in the course*. The Chair of Art was also very concerned and

---

[6] *Id*. p. 2.
[7] *See* Dkt. No. 30-2 pp. 11–12 (Plaintiff's deposition testimony).
[8] Dkt. No. 30-1 p. 9.
[9] *Id*.
[10] *Id*.
[11] *Id*. p. 2, ¶ 8.

spent many hours meeting with the students and providing solutions for extra instruction by other faculty.[12]

When confronted about the complaints, Plaintiff explained in an email that "admittedly, I have not met my own teaching standards for both courses . . . . If this means that I will have to issue incompletes and follow up with students next semester, I would be more than happy to do so."[13]

Plaintiff thereafter physically returned to UTPA in spring 2014 to teach in-person.[14] UTPA's Handbook of Operating Procedure ("HOP") 4.13.1 provided: "[A]ny employee who engages in outside employment . . . shall file a report, the Outside Employment Application, with the appropriate Vice President annually by September 30."[15] Furthermore: "No full-time employee of the University . . . shall be employed in any outside work or activity . . . until a description of the nature and extent of the employment has been filed with and approved at the Vice President level."[16]

Nevertheless, in February 2014, Plaintiff disclosed that she had been employed in 2013 as a "visiting artist" at Marygrove College in Detroit.[17] She did not file an Outside Employment Application[18] or otherwise receive formal approval for employment outside of UTPA.[19] Specifically, Plaintiff taught "Art 276" at Marygrove College during both the spring and fall semesters of 2013, requiring approximately 5.5 hours per week of dedication, and Plaintiff was paid a total of $5,179.20.[20] Thus, Plaintiff ostensibly violated UTPA policy by working for Marygrove College without obtaining permission in advance from UTPA.

---

[12] *Id.* p. 31 (emphasis added).
[13] Dkt. No. 30-3 p. 1.
[14] Dkt. No. 30-1 p. 2, ¶ 10.
[15] *Id.* p. 35 (second paragraph).
[16] *Id.*
[17] *Id.* p. 2, ¶ 10.
[18] *Id.* p. 35 (third paragraph).
[19] Dkt. No. 30-2 p. 6.
[20] Dkt. No. 30-1 pp. 28–29.

In June 2014, Guerra expressed her concerns to UTPA leadership about Plaintiff's unauthorized outside employment throughout 2013 and Plaintiff's poor teaching in fall 2013.[21] Guerra concluded: "[S]tudents at UTPA did not receive adequate/proper instruction in [Plaintiff's] classes. [Plaintiff's] responsibilities to UTPA and our students were neglected and were compromised by her commitment to another institution."[22] Plaintiff took advantage of subsequent opportunities to explain herself to UTPA leadership,[23] but ultimately Rodríguez—UTPA's Provost and Vice President of Academic Affairs—issued a disciplinary letter to Plaintiff on July 21, 2014, stating:

> In violation of HOP 4.13.1, you did not request nor were you authorized to engage in this outside employment [at Marygrove College].
>
> * * *
>
> Furthermore, both the Department Chair and the Dean had to resolve significant issues and concerns with students in your online courses during the [f]all of 2013, including the apparent lack of communication and proper online instruction for your students while you were teaching at Marygrove College and serving as a Visiting Artist.
>
> Based on your June 30 letter and on the extenuating circumstances you presented, the following disciplinary actions will be imposed:
>
> 1) Your faculty salary will be reduced by $508.54 per month for 12 months. This sum will be deducted from your monthly paycheck, beginning September 1, 2014, resulting in a monetary sanction equal to roughly 10% of your current annual salary, or $6,102.50.
>
> 2) You will not be allowed to teach online courses for a period of three (3) years.
>
> 3) After this three year period, you will not be allowed to teach online courses until you are certified by COLLT. Also, any proposed online teaching must be approved by the Department Chair, Dean, and Provost.[24]

---

[21] *Id*. pp. 30–31.
[22] *Id*. p. 31.
[23] *See id*. pp. 32–34 & 37–39.
[24] *Id*. p. 40.

UTPA thereafter dissolved by legislative decree on August 31, 2015, thus Plaintiff's employment at UTPA ended.[25] Plaintiff applied to the newly-created UTRGV during its "Phase I" hiring cycle, but was rejected on October 6, 2014 due to UTRGV's hiring criteria 4.1c—"no disciplinary action for the past seven years."[26] Plaintiff then applied to UTRGV during its "Phase II" hiring cycle, but the job posting she applied for "was withdrawn and no one was hired for the position."[27]

### B. *Procedural History*

Plaintiff sued Rodríguez, Guy Bailey ("Bailey"), UTPA, and UTRGV in state court on October 6, 2016,[28] alleging violations of her substantive and procedural due process rights[29] as well as her FMLA rights,[30] and requesting declaratory and equitable relief.[31] Defendants subsequently removed the case,[32] and Judge Randy Crane ultimately recused himself.[33] Defendants thereafter filed a motion to dismiss,[34] which this Court granted in most respects.[35] Plaintiff was granted leave to amend her FMLA claim except insofar as it was aimed at UTPA and UTRGV and arose from self-care leave—this theory was clearly barred by UTPA and UTRGV's Eleventh Amendment immunity.[36]

Plaintiff filed her first amended complaint—this time not naming Bailey as a defendant—containing only her FMLA claim.[37] Plaintiff specifically claimed violations of § 2615(a)(1)–(2),

---

[25] *Id.* p. 3, ¶ 16.
[26] Dkt. No. 30-1 p. 47.
[27] *Id.* p. 3, ¶ 15.
[28] Dkt. No. 1-3 p. 5.
[29] *Id.* p. 11.
[30] *Id.* p. 8.
[31] *Id.* pp. 13–14.
[32] Dkt. No. 1.
[33] Dkt. No. 5.
[34] Dkt. No. 10.
[35] Dkt. No. 14 pp. 15–16.
[36] *Id.* p. 16.
[37] Dkt. No. 18.

citing supporting regulations.[38] In the amended complaint, Plaintiff alleges that "[w]hen she returned from FMLA leave for the Fall 2013 semester, [Plaintiff] was not placed in the same or an equivalent position and her pay was eventually reduced. This is a violation of Section 2614(a) of the FMLA."[39] Plaintiff also alleged that a "disciplinary letter was issued in retaliation for [Plaintiff] taking FMLA leave,"[40] that this was a pretext for her use of FMLA leave,[41] and that the discipline was the sole basis for denial of employment at UTRGV.

Independently, Plaintiff filed another case ("Sanders II") in state court against UTPA and UTRGV in 2017, alleging Title VII violations built upon the same facts alleged in the instant case.[42] Thereafter, Sanders II was removed[43] and assigned to Judge Ricardo Hinojosa, who recused himself.[44] The Sanders II Defendants filed a dismissal motion, which this Court granted on the basis that Plaintiff's Title VII claims were time-barred.[45]

Defendants in the present case filed the instant motion for summary judgment on December 15, 2017,[46] and Plaintiff responded twenty-one days later with a request for extra time to respond.[47] The Court granted the extension,[48] and Plaintiff timely responded within the extended deadline,[49] rendering the instant motion ripe for review. The Court now turns to its analysis.

---

[38] *Id*. pp. 6–8.
[39] *Id*. p. 7, ¶ 47.
[40] *Id*. ¶ 54.
[41] *Id*. ¶ 56.
[42] *See Sanders vs. The Univ. of Tex. Pan-Am. et al.*, 7:17-CV-00446, Dkt. No. 1-4.
[43] Dkt. No. 1.
[44] Dkt. No. 4.
[45] Dkt. No. 12.
[46] Dkt. No. 30.
[47] Dkt. Nos. 31–32.
[48] Dkt. No. 33.
[49] Dkt. No. 34.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[50] "A fact is 'material' if its resolution could affect the outcome of the action,"[51] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[52] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[53]

The movant bears the initial burden of showing the absence of a genuine issue of material fact,[54] but is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[55] The non-movant must then demonstrate the existence of a genuine issue of material fact.[56] This demonstration must specifically indicate facts and their significance,[57] and cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation[.]"[58]

In conducting its analysis, the Court may consider evidence from the entire record, viewing that evidence in the light most favorable to the non-movant.[59] Rather than combing through the record on its own, however, the Court looks to the motion for summary judgment

---

[50] Fed. R. Civ. P. 56(a).
[51] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, Inc., 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[52] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[53] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[54] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[55] *See id.* at 323–25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995).
[56] *See Celotex Corp.*, 477 U.S. at 323.
[57] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[58] *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[59] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).

and response to present the evidence for consideration.[60] Parties may cite to any part of the record, or bring evidence in the motion and response.[61] By either method, parties need not proffer evidence in a form admissible at trial,[62] but must proffer evidence substantively admissible at trial.[63]

## III. DISCUSSION

Defendants contend that summary judgment in their favor is warranted for three reasons. *First*, they argue Plaintiff's FMLA claims are barred by the applicable statute of limitations.[64] *Second*, Defendants contend that Plaintiff's FMLA claims fail on the merits.[65] And *third*, Rodríguez in particular argues that he is entitled to qualified immunity in his personal capacity.[66] The Court addresses each argument in turn, and ultimately agrees that summary judgment in Defendants' favor is warranted.

### A. *Plaintiff's claims are largely barred by the applicable statute of limitations*

The FMLA has a two-year statute of limitations, unless the alleged violation was willful, in which case, it is three years.[67] To establish a willful violation of the FMLA, "a *plaintiff* must show that his employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute."[68] A negligent violation of the FMLA is not a willful violation.[69]

---

[60] *See* Fed. R. Civ. P. 56(e).
[61] *See* Fed. R. Civ. P. 56(c).
[62] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[63] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("[T]he evidence proffered by the plaintiff to satisfy [her] burden of proof must be competent and admissible at trial.").
[64] Dkt. No. 30 pp. 13–15.
[65] *Id.* pp. 15–21.
[66] *Id.* pp. 22–23.
[67] 29 U.S.C. § 2617(c)(1); *Henson v. Bell Helicopter Textron, Inc.*, 128 Fed. Appx. 387, 392–393 (5th Cir. 2005).
[68] *Henson*, 128 Fed. Appx. at 393.
[69] *Mozingo v. Oil States Energy, Inc.*, 661 Fed. Appx. 828, 830 (5th Cir. 2016) (emphasis added).

Here, Plaintiff has supplied no meaningful facts that Defendants engaged in a willful violation of the FMLA, or that they acted with reckless disregard for the same. Plaintiff simply asserts that Rodríguez approved her FMLA leave, and that after Plaintiff took leave, Rodríguez disciplined her.[70] Plaintiff proceeds under two assumptions: (1) temporal proximity is sufficient as a matter of law; and (2) the FMLA protects employees from discipline even if they committed misconduct while on FMLA leave. Neither is correct.

While temporal proximity may in some cases be sufficient to establish a prima facie case, such cases "uniformly hold that the temporal proximity must be very close."[71] Here, Plaintiff completed her FMLA leave on April 1, 2013 yet she was not disciplined until July 21, 2014, over a year later. As to the second assumption, the FMLA does not offer blanket protection from adverse employment actions; it protects for use of, or in retaliation for use of FMLA. Courts have specifically recognized that the FMLA "does not shield an employee from dismissal merely because the alleged misconduct occurred while on leave."[72] Thus, the fact that Rodríguez knew Plaintiff had used FMLA and that the discipline pertained to Plaintiff's conduct while on FMLA is not evidence of willfulness. Accordingly, the applicable limitations period is two years, and because the present case was filed on October 6, 2016, Plaintiff's FMLA claims can only be supported by events taking place on or after October 6, 2014.

In her response to the instant motion, Plaintiff notes ten events which took place on or after October 6, 2014 that supposedly form the basis of her FMLA claims: ten paychecks she

---

[70] Dkt. No. 34, ¶ 39.
[71] *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).
[72] *See e.g., Capps v. Mondelez Glob. LLC*, 147 F. Supp. 3d 327, 339 (E.D. Pa. 2015), aff'd, 847 F.3d 144 (3d Cir. 2017) (quoting *Warwas v. City of Plainfield*, 489 Fed.Appx. 585, 588 (3d Cir. 2012); *Lopez v. Lopez*, 997 F. Supp. 2d 256, 271 (D.N.J. 2014); *Rowe v. United Airlines, Inc.*, 62 F. Supp. 3d 1225, 1232 (D. Colo. 2014), aff'd, 608 Fed. Appx. 596 (10th Cir. 2015) (citing *Hoffman v. Prof'l Med. Team*, 394 F.3d 414 (6th Cir. 2005)); *Rush v. E.I. DuPont DeNemours & Co.*, 911 F. Supp. 2d 545, 562 (S.D. Ohio 2012) (citing *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 579 (6th Cir. 2007)); *Hoskins v. Pridgeon & Clay, Inc.*, 2007 WL 1031636, at *11 (W.D. Mich. Apr. 3, 2007); *Dune v. G4s Regulated Sec. Sols., Inc.*, 2014 WL 7920436, at *13 (D.S.C. Dec. 15, 2014), report and recommendation adopted, 2015 WL 799523 (D.S.C. Feb. 25, 2015).

received from November 2014 to August 2015 which were each reduced by $508.54 as a result of the $6,102.50 salary reduction penalty earlier imposed by Rodríguez on July 21, 2014.[73] However, Plaintiff's pay was not reduced progressively from November 2014 to August 2015. It was reduced all at once on July 21, 2014. It is simply *because* of the July 21, 2014 twelve-month salary reduction that Plaintiff's November 2014 to August 2015 paychecks were smaller.[74]

Even putting this factual distinction aside, limitations periods in discrimination cases—closely related to the nature of the present case—focus "upon the time of the *discriminatory acts*, not upon the time at which the consequences of the acts become most painful."[75] Here, the supposedly discriminatory/retaliatory act was Rodríguez's decision—on July 21, 2014—to reduce Plaintiff's salary by $6,102.50 assessed over the court of one year. The fact this allegedly retaliatory decision became most painful from November 2014 to August 2015 is irrelevant. Thus, because Rodríguez's July 21, 2014 decision took place about three months outside the applicable two-years limitations period, neither it nor the subsequently-reduced paychecks can properly form the basis of Plaintiff's FMLA claims.

The only remaining potential basis for Plaintiff's FMLA claims that occurred within the two-year limitation period is UTRGV's October 6, 2014 rejection of Plaintiff's Phase I application.[76] Plaintiff contends (in conclusory fashion) that this was a form of retaliation by

---

[73] *See* Dkt. No. 30-1 p. 40.
[74] *See Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 628–643 (2007) (rejecting the plaintiff's suggested "paycheck accrual rule" in the Title VII context). The Court observes that *Ledbetter* was abrogated by statute in 2009, but this statutory abrogation only applied in the Title VII, ADEA, ADA, and Rehabilitation Act contexts— not the FMLA. *See* 90 Tex. L. Rev. 859, 942 n.371. Thereafter, various district courts have found the logic in *Ledbetter* persuasive in the FMLA context, and thus applied so. *See Maher v. Int'l Paper Co.*, 600 F. Supp. 2d 940, 945–954 (W.D. Mich. 2009); *Heggie v. TJX Companies, Inc.*, 2012 WL 2061806, at *2 (D. Mass. June 6, 2012); *Beekman v. Nestle Purina Petcare Co.*, 635 F. Supp. 2d 893, 907 (N.D. Iowa 2009); *Charnley v. Boeing Co.*, C08-0130RSL, 2009 WL 279030, at *2 (W.D. Wash. Feb. 5, 2009).
[75] *See Selby v. Revlon Consumer Products Corp.*, 1998 WL 101903, at *2 (N.D. Tex. Feb. 26, 1998) (quoting *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)).
[76] Dkt. No. 34 p. 10, ¶ 52.

UTRGV for Plaintiff taking FMLA leave in spring 2013.[77] Insofar as this is Plaintiff's FMLA theory, it is not barred by the applicable statute of limitations.

In sum, with the exception of UTRGV's rejection of Plaintiff's Phase I application, Defendants did not commit any acts supporting Plaintiff's FMLA claims within the applicable two-year statute of limitations—i.e., after October 6, 2014. Thus, all of Plaintiff's FLMA claims must be dismissed except insofar as they rests upon UTRGV's rejection of Plaintiff's Phase I application.

B.     *Plaintiff's FMLA claims fail on the merits*

Even if Plaintiff's FMLA claims were not largely barred by the applicable statute of limitations, they fail on the merits, thus forming an independent basis for granting summary judgment in Defendants' favor. Rather than only addressing UTRGV's rejection of Plaintiff's Phase I application—the only fact within the limitations period that could support Plaintiff's FMLA retaliation claim—the Court proceeds to analyze the parties' FMLA contentions *in their entirety*.

The FMLA "was enacted to permit employees to take reasonable leave for medical reasons,"[78] either for themselves, or to care for close family members. To this end, the FMLA contains two distinct sets of provisions. The *first* "are prescriptive: they create a series of substantive rights, namely, the right to take up to twelve weeks of unpaid leave under certain circumstances."[79] Moreover, "[a]fter a qualifying absence, the employer must restore the employee to the same position previously held by the employee before taking leave under the

---

[77] *Id.* pp. 10–11, ¶¶ 52 & 58.
[78] *Elsensohn v. St. Tammany Par. Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008).
[79] *Id.*

FMLA or a comparable position, with equivalent pay, benefits, and working conditions."[80] These rights "comprise the prescriptive or substantive FMLA rights; claims for violations of these rights invoke entitlement or interference theories and are brought under § 2615(a)(1)."[81]

The *second* set of provisions are proscriptive in nature, and "include an employee's right not to be discriminated or retaliated against for having exercised the right to take FMLA leave. Claims for violations of these rights are brought under § 2615(a)(2),"[82] and "create a cause of action analogous to the actions for discrimination and for retaliation that are found in Title VII and the other discrimination statutes."[83] Plaintiff specifically alleges violations of §§ 2615(a)(1) & (a)(2).[84] Both fail.

### i.    *Section 2615(a)(1)—interference with FMLA leave*

Section 2615(a)(1) provides: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."[85] This claim has five essential elements within the Fifth Circuit:

(1) The claimant is an eligible employee,

(2) The employer is subject to the FMLA's requirements,

(3) The claimant is entitled to leave,

(4) The claimant gave proper notice of her intention to take FMLA leave, and

(5) The employer denied the claimant the benefits to which she was entitled under the FMLA.[86]

---

[80] *Haley v. All. Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). Plaintiff's amended complaint packages her "equivalent position" claim as a violation of 29 U.S.C.A. § 2614(a)(1)(B) (West).
[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] Dkt. No. 18 p. 6, ¶¶ 39–41.
[85] 29 U.S.C.A. § 2615(a)(1) (West).
[86] *See Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 Fed. Appx. 312, 316 (5th Cir. 2013).

Here, there is no evidence supporting the fifth element—that Plaintiff was denied FMLA benefits to which she was entitled. Rather, UTPA worked with Plaintiff to ensure she received all the FMLA leave she was entitled to, cognizant that Plaintiff had important personal and family health issues to attend to.[87] Plaintiff's deposition reveals the following exchange:

> Q. They approved your FMLA leave, correct?
> A. They did.
> Q. They never denied your FMLA life?
> A. No, they did not.
> Q. They didn't require you to come to work while you were on FMLA leave?
> A. No.
> Q. They didn't require you to live in Hidalgo County while you were on FMLA leave?
> A. No.
> Q. You got paid during the entire time you were on FMLA leave?
> A. Yes.[88]

Indeed, Plaintiff's immediate supervisor, Suzan Fitzsimmons, approved Plaintiff's FMLA leave request within one week of when it was made.[89] Plaintiff thereafter received an official letter from UTPA's human resources department recognizing the FMLA approval.[90] This letter not only clarified how Plaintiff could use her FMLA leave (i.e., all at once or intermittently),[91] but also explained how it worked in conjunction with her sick leave, and what Plaintiff could do in the event her FMLA and sick leave ran out.[92] Finally, the evidence suggests UTPA did not contact Plaintiff during her FMLA leave.[93] Thus, UTPA did not actually interfere with Plaintiff's FMLA leave.

---

[87] *See* Dkt. No. 30-1 p. 30 ("During the [s]pring of 2013, [Plaintiff] requested [FMLA leave] to care for her ailing father and also to receive medical treatment.").

[88] Dkt. Nol. 30-2 pp. 11–12.

[89] *See* Dkt. No. 30-1 p. 6 (Plaintiff submitted her FMLA request on December 11, 2012, and her request was approved on December 18, 2012).

[90] Dkt. No. 30-1 p. 8.

[91] *Id.* ("All or part of this leave may be taken continuously or, if you and your department agree on a schedule, you can take it intermittently or on part time basis.").

[92] *Id.* ("If you are still out after your sick leave ends you will need to file a Leave Without Pay, beginning the day after your sick leave ends . . . .").

[93] Dkt. No. 30-2 p. 5.

The Fifth Circuit has also held that a § 2615(a)(1) interference-based claim can lie if the employer fails "to restore an employee to the same or equivalent position"[94] upon return from their FMLA leave. According to supporting regulations,

> [a]n equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites, and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility and authority.[95]

Here, Plaintiff was restored in fall 2013 to the same position with the same title, pay, and job duties.[96] The only difference is that Plaintiff taught online courses for UTPA, rather than in-person courses. Guerra attests that "the substantive teaching duties, skills, and responsibilities [were] the same . . . ."[97] However, Plaintiff contends that she "was put in an online teaching position without adequate training or equipment."[98]

The Court agrees with Defendants that Plaintiff was returned to an equivalent position in fall 2013. Because Plaintiff received the same position, pay, and job duties, the only meaningful difference was that she taught online courses rather than in-person courses. Although Plaintiff worked from Detroit rather than from Edinburg, Texas during fall 2013, this geographical difference was the result of Plaintiff's choice, not UTPA's command. UTPA simply permitted Plaintiff to teach online courses, which by nature can be taught from any place with internet connection. Moreover, the relevant underlying regulations aim to restore FMLA beneficiaries to locations "that [do] not involve a significant increase in commuting time or distance."[99] Here, Plaintiff was living in Detroit, Michigan during fall 2013. Thus, permitting her to work online

---

[94] *McArdle v. Dell Products, L.P.*, 293 Fed. Appx. 331, 334 (5th Cir. 2008).
[95] 29 C.F.R. § 825.215(a).
[96] Dkt. No. 30-1 p. 2, ¶ 8.
[97] *Id.*; *see also* Dkt. No. 30-2 p. 12.
[98] Dkt. No. 34 p. 10, ¶ 53.
[99] 29 C.F.R. § 825.215(e)(1).

(i.e., from Detroit, Michigan rather than Edinburg, Texas) during the fall 2013 semester significantly decreased Plaintiff's commuting time and distance. Thus, Plaintiff's ability to teach online courses in fall 2013 only increased Plaintiff's geographical freedom.

More importantly, Plaintiff was not forced to teach online classes from Detroit, Michigan against her wishes. Rather, Plaintiff affirmatively and specifically requested to teach online classes at UTPA in fall 2013 so she could remain in Detroit to be with her family and receive ongoing medical treatment.[100] This is important because the relevant underlying regulations interpreting the meaning of "equivalent position" with regard to working conditions provide:

> [The] FMLA does not prohibit an employer from accommodating an employee's request to be restored to a different shift, schedule, or position which better suits the employee's personal needs on return from leave, or to offer a promotion to a better position. However, an employee cannot be induced by the employer to accept a different position against the employee's wishes.[101]

Thus, an employer can accommodate an employee's request for different working conditions, but cannot force significantly different working conditions upon a non-consenting employee upon return from their FMLA leave. As noted, Plaintiff not only consented to teach online classes, she specifically requested it, writing the following request to Guerra:

> My father passed away this past Sunday, April 28, 2013 as I was here receiving treatment for breast cancer in Detroit. My family and I are this week making arrangements for my father's service and I am grateful that I was here by my parent[']s side.
>
> In accordance with our conversation at the end of last semester regarding my plans for Family and Medical Leave, *I am requesting permission to teach online classes full time for the [f]all 2013 semester*. I successfully completed the BBL07-SP13 Teaching Online Program: Blackboard Learn with Ram DeLaRosa this past semester.[102]

---

[100] Dkt. No. 30-1 p. 9.
[101] 29 C.F.R. § 825.215(e)(4).
[102] Dkt. No. 30-1 p. 9 (emphasis added).

There is simply no evidence that Plaintiff was "induced," as she alleges, to teach online classes. For these reasons, Plaintiff was returned to an equivalent position teaching online classes at UTPA in fall 2013.

Plaintiff contends that she was not properly equipped or trained to teach her online classes:

> The laptop provided by UTPA could not handle the large digital files submitted by the students. I had to purchase an external drive at my own expense to handle the files. It soon crashed and I had to take the drive to Best Buy to retrieve the information. I was not trained in studio by UTPA which was critical in order for me to do my job.[103]

However, regardless of whether Plaintiff was properly equipped and trained, she consented to the technological and administrative differences of online teaching by specifically requesting it. Moreover, Plaintiff's request came with the assurance that she *was* properly trained to teach online classes: "I successfully completed the BBL07-SP13 Teaching Online Program: Blackboard Learn with Ram DeLaRosa this past semester."[104] Plaintiff does not cite evidence suggesting Guerra had any reason to think otherwise. Thus, Plaintiff's contention that she was not properly equipped and trained is unavailing.

Plaintiff also attests in a single sentence of her affidavit that "a different set of skills was necessary" to teach online.[105] This statement is conclusory, self-serving, and thus not competent summary judgment evidence.[106] However, even if true, Plaintiff requested to teach online, assuring UTPA that she was qualified.

---

[103] Dkt. No. 34-6 ¶ 26.

[104] Dkt. No. 30-1 p. 9.

[105] Dkt. No 34-6.

[106] *See City of Galveston v. Consol. Concepts, Inc.*, 2017 WL 1196213, at *5 (S.D. Tex. Mar. 31, 2017), appeal dismissed sub nom. *City of Galveston*, 2017 WL 5157557 (5th Cir. June 9, 2017) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) ("[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.")).

Even if Plaintiff was not restored to an equivalent position at UTPA in fall 2013, her § 2615(a)(1) interference claim could not be sustained on that basis. The Fifth Circuit has held that the right to be restored to an equivalent position expires upon completion of the twelve-week FMLA period itself.[107] Here, Plaintiff's twelve-week FMLA leave began on January 14, 2013 and ended on April 9, 2013.[108] Because the spring semester was not over by April 9, 2013, Plaintiff had to use sick leave to cover April 10, 2013 to May 31, 2013.[109] Plaintiff did not return to work for UTPA upon completion of her FMLA leave—April 9, 2013. Instead, she returned at the beginning of the fall 2013 semester.[110] Thus, Plaintiff was not entitled under the FMLA to restoration of an equivalent position at UTPA in the first instance.

In sum, Defendants did not actually interfere with Plaintiff's FMLA leave, and UTPA was not obligated under the FMLA to restore Plaintiff to an equivalent position, but did so anyway. Thus, Defendants did not violate § 2615(a)(1).

### ii.    Section 2615(a)(2)—retaliation for taking FMLA leave

Plaintiff also specifically pleads that Defendants violated § 2615(a)(2), which provides: "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."[111]  When, such as here, there is no direct evidence of retaliation, FMLA retaliation claims in the Fifth Circuit are

---

[107] *Beckendorf v. Schwegmann Giant Super Markets, Inc.*, 134 F.3d 369 (5th Cir. 1997) ("Beckendorf never returned from her FMLA leave and her right to be reinstated thus never arose. Another way of putting it is that once her leave expired, any right to restoration also expired and Schwegmann was no longer under any express statutory duty imposed by the FMLA to reinstate Beckendorf."); *see also Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001) (collecting cases) (abrogated on different grounds in *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53 (2006)).
[108] Dkt. No. 30-1 p. 8.
[109] *Id.*
[110] *Id.* p. 2, ¶ 8.
[111] 29 U.S.C.A. § 2615(a)(2) (West).

analyzed using the *McDonnell Douglas* burden-shifting framework.[112] Under this framework, the claimant must first establish a prima facie claim of retaliation, which consists of the following elements:

(1) The claimant was protected under the FMLA,

(2) The claimant suffered an adverse employment decision, and either

(3) The claimant was treated less favorably than a similarly situated employee or the adverse decision was made because the claimant took FMLA leave.[113]

If the claimant establishes a prima facie retaliation claim, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment decision.[114] If the employer does so, then the "the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination."[115] With regard to this burden, if the claimant concedes that discrimination was not the sole basis for the adverse action, then the "mixed motive" framework applies, and the claimant can alternatively prove "that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination."[116] Finally, if the claimant satisfies this burden, then the employer can set forth an affirmative defense that "it would have taken the same action despite the discriminatory animus."[117]

*Plaintiff fails to establish a prima facie retaliation claim*

Here, and at a minimum, Plaintiff does not establish the third element of her prima facie retaliation claim, and the burden-shifting process cannot get off the ground. Plaintiff identifies

---

[112] *Wheat v. Florida Par. Juvenile Justice Com'n*, 811 F.3d 702, 705 (5th Cir. 2016); *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).
[113] *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 Fed. Appx. 312, 317 (5th Cir. 2013); *Elsensohn v. St. Tammany Par. Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008).
[114] *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).
[115] *Id*. at 332–333.
[116] *Id*. at 333.
[117] *Id*.

three actions which might have constituted retaliation against her for taking FMLA leave in spring 2013: (1) UTPA's permitting Plaintiff to teach online classes in fall 2013 per her request,[118] (2) Rodríguez's July 2014 discipline letter[119] which temporarily decreased Plaintiff's pay and limited her ability to teach online courses, and (3) Defendants' rejection of Plaintiff's Phase I UTRGV employment application in October 2014.[120]

Plaintiff does not contend in her amended complaint or her response to the instant motion that she was treated less favorably than a similarly situated employee.[121] Thus, Plaintiff must prove that the aforementioned employment actions were adverse and "made because [Plaintiff] took FMLA leave."[122] Plaintiff fails to do so for four reasons.

*First*, Plaintiff indicates that she "was put in an online teaching position without adequate training or equipment."[123] In doing so, Plaintiff conflates her § 2615(b) retaliation claim with her § 2615(a) interference claim, the latter being the proper vehicle for arguing that Plaintiff was not reinstated to an equivalent position upon her return from FMLA leave. Thus, Plaintiff's argument fails for reasons already stated in the Court's § 2615(a) analysis.

Even so, it is undisputed that Plaintiff *requested* to teach online classes at UTPA in fall 2013, specifically indicating that she was properly trained to do so.[124] Thus, Plaintiff's ability to teach online courses in fall 2013 cannot properly be viewed as adverse employment action in the

---

[118] Dkt. No. 34 p. 1, ¶ 53.
[119] *Id*. p. 10, ¶ 50. Plaintiff contends that this discipline was ongoing, presumably with reference to the fact that her paychecks were subsequently lowered for twelve months. However, consistent with previous analysis from this opinion, the Court construes the decision to discipline Plaintiff as the adverse employment action against her. Even so, the later in time certain actions are which the Court might consider, the farther removed they are from Plaintiff's FMLA leave, and thus the less likely they would be to satisfy the third element of Plaintiff's prima facie retaliation claim.
[120] *Id*. ¶ 52.
[121] *See id* p. 16, ¶¶ 86 & 88. Plaintiff objects to certain evidence submitted by Defendants indicating UTPA and UTRGV did not treat Plaintiff any differently than other individuals who took FMLA leave. However, Defendants do not bear the burden to disprove Plaintiff's third element. Instead, Plaintiff bears the burden to prove it. Thus, even if the Court were to grant this request, it would not change the fact Plaintiff failed to carry her initial burden.
[122] *Lanier*, 527 Fed. Appx. at 317.
[123] Dkt. No. 34 p. 1, ¶ 53.
[124] Dkt. No. 30-1 p. 9

first instance—it can only reasonably be viewed as an accommodation. Even if it could be viewed as an adverse employment action, there is no evidence that UTPA did it *because* Plaintiff exercised her FMLA rights. Rather, the evidence suggests UTPA permitted Plaintiff to teach online courses so she could remain in Detroit to attend to family and medical issues[125] even after her FMLA leave expired.[126]

*Second*, and otherwise, Plaintiff only provides a conclusory statement in her response to the instant motion to satisfy the third element of her § 2615(b) retaliation claim: "There is a causal connection between Sanders taking FMLA leave and her continuing discipline and failure to be hired at UTRGV."[127] This statement is not accompanied by any further explanation or citation to evidence, and is thus incapable of establishing the third element of Plaintiff's prima facie retaliation claim.

*Third*, and as previously noted, the Fifth Circuit has held that temporal proximity must be "very close" when causation rests solely on temporal proximity.[128] Indeed, even a "three-month period, standing alone, is insufficient."[129] Here, the remaining alleged adverse employment actions (Plaintiff's July 2014 discipline and UTRGV's October 2014 rejection) occurred approximately fifteen and eighteen months after Plaintiff's spring 2013 FMLA leave expired.[130] These enormous time gaps not only fails to independently satisfy the third element of Plaintiff's prima facie retaliation claim, they also strongly suggests that Plaintiff's July 2014 discipline and October 2014 UTRGV rejection were *not* motivated by Plaintiff taking FMLA leave.

---

[125] *Id*.
[126] *Id*. p. 1, ¶ 5.
[127] Dkt. No. 34 p. 11, ¶ 58.
[128] *Amsel v. Tex. Water Dev. Bd.*, 464 Fed. Appx. 395, 402 (5th Cir. 2012); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).
[129] *Baumeister v. AIG Glob. Inv. Corp.*, 420 Fed. Appx. 351, 356 (5th Cir. 2011).
[130] *See* Dkt. No. 30-1 p. 8 (Plaintiff's FMLA leave expired on April 9, 2013); *Id* p. 40 (Plaintiff's UTPA discipline on July 21, 2014); *Id*. p. 47 (Plaintiff's UTRGV Phase I rejection letter, dated October 6, 2014).

*Fourth*, Plaintiff experienced positive intervening employment activity, which the Fifth Circuit has indicated is a relevant factor in determining causation in employment discrimination cases.[131] Notably, after Plaintiff's FMLA leave expired, she requested to teach online classes at UTPA in fall 2013.[132] *Plaintiff's request was granted*.[133] This constitutes evidence that Plaintiff's July 2014 discipline and October 2014 UTRGV rejection were not attempts to retaliate against Plaintiff for taking FMLA leave. In sum, Plaintiff has failed to prove the third element of her prima facie retaliation claim.

*Even if* Plaintiff had shifted the burden to Defendants by proving up her prima facie retaliation claim—she does not—Defendants have articulated and provided evidence of legitimate, non-discriminatory reasons for any adverse employment action. In order to carry their burden, Defendants need only produce evidence which, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action."[134] They have done so.

Even assuming UTPA's authorization for Plaintiff to teach online in fall 2013 was an adverse employment action—it was not—it was made because Plaintiff specifically requested it,[135] and there is no evidence it would have been permitted or required absent Plaintiff's request. Plaintiff's July 2014 discipline was ostensibly based upon Plaintiff's unauthorized outside teaching, as well as her poor online teaching (including a lack of communication with students) in fall 2013.[136] Moreover, her subsequent UTRGV rejection was premised on the existence of her

---

[131] *Dumas v. Union Pac. R.R. Co.*, 294 Fed. Appx. 822, 827 (5th Cir. 2008) (Noting in the Title VII context that "[w]hile not conclusive, the lapse of time *and the intervening positive employment action* further weaken the already tenuous causal link between Dumas' protected activity and his termination.") (emphasis added).

[132] Dkt. No. 30-1 p. 9.

[133] *Id*. p. 30.

[134] *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

[135] Dkt. No. 30-1 p. 9.

[136] *See id.* p. 40.

July 2014 discipline.[137] Thus, Defendants have provided sufficient evidence to shift the burden back onto Plaintiff.

*Plaintiff does not establish pretext*

Plaintiff fails to carry her secondary burden, which requires "substantial evidence of pretext,"[138] such that the preponderance standard could be satisfied.[139] Plaintiff does not concede that her UTPA discipline and UTRGV rejection were rooted (even in part) in her alleged misconduct and poor teaching. Thus, in her response to the instant motion, Plaintiff does not engage in a mixed-motives analysis, and proceeds to argue only that her alleged misconduct and poor teaching were mere pretexts to cover up Defendants' discriminatory motives.[140] Plaintiff fails to make this showing.

Plaintiff notes that one of the bases for her 2014 discipline was her unauthorized outside teaching in spring 2013—while she was on FMLA leave.[141] Plaintiff then claims the "unauthorized outside teaching" basis is a mere pretext for unlawful discrimination. Plaintiff advances this notion a few different ways—each fails.

*First*, Plaintiff contends that HOP 7.6.8 (which governs FMLA leave) does not expressly prohibit unauthorized outside work while on FMLA leave.[142] Plaintiff thus implies she did not violate UTPA policy by having unauthorized outside employment in spring 2013, did not deserve her July 2014 discipline (insofar as it was premised on outside work in spring 2013), and

---

[137] *Id*. p. 47 ("[W]e find that you did not fulfill the following hiring criterion: 4.1.c (no disciplinary action for the past seven years). Accordingly, UTRGV will not be offering you a position in this first phase of faculty hiring.").
[138] *See Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001).
[139] *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 332–333 (5th Cir. 2005).
[140] *See* Dkt. No. 34. pp. 11–14.
[141] *Id*. p. 11, ¶ 60.
[142] *Id*. 12, ¶ 62.

thus her "violation" of UTPA's outside-work policy must have been a pretext for her FMLA leave.[143]

However, Plaintiff ignores the other bases for her July 2014 discipline, namely, her outside employment and poor teaching in fall 2013 (which did not occur while Plaintiff was on FMLA leave). Moreover, UTPA HOP 7.6.8 does not portend to govern or even interact with UTPA's unauthorized outside employment rules. Instead, such conduct is governed by HOP 4.13.1,[144] which does not ostensibly excuse UTPA employees from its requirements merely because they are on FMLA leave. Even so, it is not the Court's job to delve into UTPA's internal procedures and business judgments, as Plaintiff wishes. The Fifth Circuit has held: "[W]e do not view the discrimination laws as vehicles for judicial second-guessing of business decisions."[145] Neither does this Court.

*Second*, Plaintiff states that she "called the UTPA Human Resources Department [in January 2013] and was told that if the outside employment was 10 or 11 hours or less that permission was not needed [for outside employment]."[146] This may very well lessen Plaintiff's culpability for obtaining unauthorized outside employment, but it says little about Rodríguez's motivation for disciplining Plaintiff in July 2014. In support of her argument, Plaintiff does not cite to any evidence that the Human Resources staff person's statement was correct, that Rodríguez knew about this phone call when he issued Plaintiff's discipline, or that anyone at UTPA was involved in both the phone call and issuing Plaintiff's discipline. It is undisputed that Plaintiff obtained unauthorized outside employment in 2013, and that some of Plaintiff's online students were sorely disappointed in her teaching in fall 2013. These ostensibly form the basis of

---

[143] *Id.*
[144] *See* Dkt. No. 30-1 pp. 14–26.
[145] *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997) (citing *Guthrie v. Tifco Indus.*, 941 F.2d 374, 378 (5th Cir.1991)).
[146] Dkt. No. 34 p. 12, ¶ 63.

Plaintiff's UTPA discipline without any reference to Plaintiff's decision to take FMLA leave. Plaintiff's second pretext argument fails.

*Third*, Plaintiff suggests that the discipline for her outside employment was a mere pretext for her use of FMLA leave because other UTPA art professors had outside employment.[147] However, the evidence cited does not indicate whether those professors obtained permission from UTPA in advance or, if not, whether UTPA disciplined those art professors. Absent this information, it is impossible to infer that UTPA was treating Plaintiff any differently than other faculty, and thus whether Plaintiff's outside employment was a mere pretext for her FMLA leave.

Plaintiff also notes that her July 2014 UTPA discipline was premised in part on her alleged poor teaching performance and lack of communication with online students in fall 2013.[148] Plaintiff argues this was a mere pretext for three reasons: (1) "all students completed the course and got grades,"[149] (2) "[Plaintiff] met [the] work requirements" of "teaching, service, and achievement,"[150] and (3) "any problems were due to UTPA's failure to train" and to "provide adequate equipment."[151] Each of these contentions fails.

Plaintiff's *first* contention—that she gave her students their grades—does not speak to whether her alleged poor teaching and lack of communication was a pretext for unlawful discrimination. Posting grades and being a poor and non-communicative professor are entirely consistent propositions.[152] With regard to Plaintiff's *second* contention—that she met her requirements—Guerra attests that Plaintiff met her annual "requirements" in teaching,

---

[147] *Id.* ¶ 64.
[148] *Id.* p. 13, ¶ 66.
[149] *Id.*
[150] *Id.* ¶ 67.
[151] *Id.*
[152] *See* Dkt. No. 34-2 p. 16. The evidence suggests that UTPA played a role in ensuring Plaintiff's students received their grades. ("[Question] Do you recall . . . whether the grades were in by a particular date or not, for [Plainitff]? [Answer] *We* made sure they were.") (emphasis added).

professional service, and achievement.[153] However, Plaintiff's cited evidence does not indicate *what year* Guerra was referencing, or whether the assessment was conducted before or after UTPA discovered Plaintiff's unauthorized outside employment (which would later form part of the explanation as to Plaintiff's poor performance in fall 2013).[154] It is also unclear what the "requirements" included, how demanding or lax they were, what their ultimate purpose and import were, and whether their satisfaction was consistent with disciplinary action.[155]

Plaintiff's *third* contention also does not establish pretext. Plaintiff cites evidence that she was not trained in the correct online teaching template, and also that her UTPA-issued laptop had trouble uploading and storing large amount of image data from her art students.[156] However, these technical difficulties combined with a lack of training tend to support the discipline rather than establish its pretextual nature. For example, Plaintiff's discipline was premised in part on her not returning emails to students for three to four weeks at a time.[157] Moreover, UTPA technical staff explained that that "it was hard to say how [Plaintiff] was communicating with the students because they could not see instructor presence in the course."[158] Plaintiff has failed to cite evidence explaining how her lack of training and equipment prevented her from being present in her online course.

Furthermore, Plaintiff "posted assignments with little instruction about how to complete them, what learning outcomes were expected, or how the students' assignments were to be

---

[153] Dkt. No. 34-3 pp. 1–2.
[154] Dkt. No. 30-1 p. 31 (fifth full paragraph) ("My conclusion after examining the facts of this issue is that students at UTPA did not receive adequate/proper instruction in Professor's classes. Her responsibilities to UTPA and our students were neglected and were compromised by her commitment to another institution.").
[155] Plaintiff also attested in her deposition that she met her "requirements," (*see* Dkt. No. 34-1 p. 18) but this attestation has the same problem as Guerra's statement.
[156] Dkt. Nos. 34-11; Dkt. No. 34-2 p. 17.
[157] *See* Dkt. No. 30-2 pp. 13–14.
[158] Dkt. No. 30-1 p. 31.

graded."[159] Moreover, Plaintiff's fall 2013 students "had not heard from [Plaintiff] for over 3 to 4 weeks."[160] Thus, it appears Plaintiff *was* able to communicate with students and post assignments, rendering the following failures inexplicable: to *adequately* (1) communicate with students, (2) explain assignments, (3) explain expected learning outcomes, and (4) supply some sort of grading rubric. Plaintiff does not cite any evidence suggesting Plaintiff's alleged technological and training difficulties have anything to do with these particular failures.

Whether due to her computer malfunctions or lack of technical expertise matters not without some evidence that: because she had taken FMLA leave; UTPA somehow induced her to request to teach online; knowing she lacked training to do so; then provided her with faulty equipment so that students could complain; such that UTPA could discipline her; so that when the legislature abolished UTPA and UTRGV implemented a plan to hire tenured professors without disciplinary action; Plaintiff would not be hired.

In sum, Plaintiff has not satisfied her initial burden to prove a prima facie retaliation claim because she fails to satisfy the third element—causation. Even if she could satisfy this element, Defendant has articulated legitimate, non-discriminatory reasons for disciplining Plaintiff. Plaintiff, in turn, has not provided substantial evidence from which a fact finder could reasonably conclude that Defendants' explanations were mere pretext to cover up an underlying discriminatory motive against Plaintiff for taking FMLA leave. For all these reasons, Defendants are entitled to summary judgment in their favor with regard to Plaintiff's § 2615(b) retaliation claim. All of Plaintiff's FMLA claims thus fail on the merits.

---

[159] *See* Dkt. No. 30-2 pp. 13–14.
[160] *Id.*

### C. *Rodríguez is entitled to qualified immunity in his personal capacity*

As another independent basis for summary judgment, Rodríguez contends that he is entitled to qualified immunity insofar as he is being sued in his personal capacity.[161] Once the qualified immunity defense is invoked by a defendant in his answer, the Plaintiff bears the affirmative burden to establish that the defendant is not entitled to that protection.[162] No doubt, this is because qualified immunity is a predicate shield from *suit*, not liability.[163] In effect, this means that Plaintiff must prove (among other things) that Rodríguez's alleged misconduct violated clearly-established FMLA law. Plaintiff fails to carry this burden.

Plaintiff contends that "Rodríguez was familiar with the FMLA . . . approved [Plaintiff's] FMLA leave request . . . approved Sanders'[] request to teach online for the [f]all of 2013 . . . put her in a position to fail, not having provided sufficient training and equipment . . . [and] disciplined her."[164] For reasons already discussed, it is not possible to derive *any* FMLA violation from this conduct. For the same reason, and all the more so, it is impossible to infer that this conduct amounted to a violation of *clearly-established* law. Thus, Rodríguez is entitled to qualified immunity, and Plaintiff had no right to bring suit against Rodríguez in his personal capacity in the first instance.

Finally, Plaintiff objects to certain evidence that this Court has not considered in its analysis.[165] Since it is not necessary to consider this particular evidence to resolve the present motion, there is no need to address Plaintiff's evidentiary objections.

---

[161] Plaintiff does not make clear in her amended complaint which capacity Rodríguez is being sued in.
[162] *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000); *Collier v. Montgomery*, 569 F.3d 214, 217–18 (5th Cir. 2009).
[163] *Melton v. Phillips*, 875 F.3d 256, 260 (5th Cir. 2017).
[164] Dkt. No. 34 pp. 15–16, ¶ 85.
[165] *Id*. p. 16, ¶¶ 86–88.

**IV.   HOLDING**

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** in full. Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**. A final judgment will issue separately.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 2nd day of February, 2018.

_____
Micaela Alvarez
United States District Judge